(139 App. Div. 372.)

### McGRATH v. W. H. HUGHES CO.

(Supreme Court, Appellate Division, Third Department. June 29, 1910.)

1. MASTER AND SERVANT (§ 234*)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.

Decedent, who was employed in a slate quarry, while walking along the edge of the slate pit, was killed by being struck by a descending car, which traveled on a cable from the bottom of the pit to a mast several feet from the edge of the pit. Decedent was killed on the first day he worked for defendant; but the year before he had worked in a quarry not over 200 feet from the one in question, and had full knowledge of the manner in which the cars were operated on the cable. *Held*, that decedent was guilty of contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 684–686; Dec. Dig. § 234.*]

2. MASTER AND SERVANT (§ 217*)—INJURIES TO SERVANT—ASSUMPTION OF RISKS.

The facts showed an assumption of risk on the part of decedent.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. MASTER AND SERVANT (§ 150*)—INJURIES TO SERVANT—NEGLIGENCE.**
　　Defendant was not negligent in failing to place guards to warn per-
　-sons of danger from the traveling car.
　　[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 150.*]
　　Cochrane, J., dissenting.

　Appeal from Trial Term, Washington County.
　Action by Philip McGrath, as administrator of the estate of Edward R. McGrath, deceased, against the W. H. Hughes Company. From a judgment in favor of defendant, plaintiff appeals. Affirmed.
　Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.
　Dillon & Sennett, for appellant.
　J. B. McCormick, for respondent.

　SMITH, P. J. The action is brought to recover damages for the death of the plaintiff's son, caused, as it is claimed, by the negligence of the defendant. The defendant was operating slate quarries in the state of Vermont. The slate is taken from a pit and carried up by means of a cable and cars to the ground above, where it is cut and trimmed. The pit of the quarry in question was about 60 feet deep, 60 feet wide, and 140 feet long. The length of the pit was north and south. A cable ran east and west from a point in the bottom of the pit upon the eastern side, up over a mast which was about 260 feet west of the western edge of the pit. Upon this cable a rubbish car was run from the pit, loaded with fragments of stone and rubbish, and there was also attached tackle which carried the blocks of slate along the cable. The slate was dropped not far from the edge of the pit at what is called the "trimmers' shanty." The rubbish was carried further on to the rubbish pile. Plaintiff's intestate was one of the trimmers, located in this trimmers' shanty. Becoming thirsty, he asked a fellow workman how to get some water, and was told to send his pail down with the rubbish cart and the boy in the pit would fill the pail with water and send it back. There were three cables, called the "south," "middle," and "north" cable. He sent his pail down the south cable. It did not come back for a time estimated as between 20 minutes and a half hour, and plaintiff's intestate, becoming impatient, went to look after it. He went to the engine house, which is situated about 15 feet north of the middle cable. Coming out from the engine house, he walked along the edge of the pit, when the boy from the pit, who gave signals to the engineer when to draw up the loads and where to place the cars when they returned, called to him and asked him if he wanted his pail of water. He said, "Yes," and while stepping on the edge of the pit a rubbish box came down the middle cable and knocked him into the pit and killed him.
　At a point estimated from 10 to 25 feet west of the edge of the pit where the plaintiff's intestate was killed, a road runs north and south. The rubbish box, when passing that road, gives a leeway of some 7 feet. From there to the edge of the pit the cable naturally

─────────────────────────────────

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

descends, until at the edge of the pit part of the bank has been worn away by the striking of slate which is carried upon the tackle up this cable. There is no occasion for men to pass over the ground between the edge of the pit and the roadway. The evidence is that it was somewhat used as a passageway over all of that ground. There was no regular path, however, which would invite any one out of the regular roadway, from which one could pass to the engine house. To a person passing over this ground between the roadway and the pit there was always danger of being struck, either with slate being carried up, or with the rubbish box passing back and forth. Loads were taken up constantly at spaces of time from three to five minutes. So that the whole situation was perfectly evident to all working around the quarry and to the plaintiff himself. The evidence is that from the shanty where he was working the cable could be seen down into the pit. There is no suggestion how that cable could be changed. It was required to pass from this mast at some distance from the pit down into a pit 60 feet in depth and only 60 feet wide. It is difficult to see how it could have been constructed so as not to have run the rubbish car near to the ground upon the edge of the pit. There would seem to be little occasion for a guard, because of the evident danger. It was scarcely less evident than would have been a railroad track upon which cars would pass back and forth out of a mine. As long as the cable with the rubbish car amply cleared the roadway, I can see no reason for the defendant to apprehend that its workmen would carelessly leave the roadway and go into a place of evident danger. It is true that these cars had theretofore knocked down two men; but the situation was then materially different. That was when the roadway was east of the engine house and along the edge of the pit.

Plaintiff's intestate was killed upon the first day upon which he was working for the defendant at this quarry. He had the year before, however, worked considerable time as signal boy in a quarry about 180 feet north of this place, so that he had full knowledge of the manner in which the stone was taken up along the cable, and full knowledge of the danger to one standing upon the edge of the pit in the line of the cable. With this experience, and with the apparent danger, the learned trial judge was, in my judgment, clearly right in holding that he both assumed the risk and was guilty of contributory negligence in placing himself in the line of this cable. Moreover, with this construction apparently necessary in the operation of this slate quarry, and without evidence that at any other quarry thus operated guards were placed to warn men of such an apparent danger, I can see no reason why, in the exercise of reasonable care, the defendant should have anticipated injury to his employés.

I recommend, therefore, that the judgment be affirmed, with costs.

Judgment affirmed, with costs. All concur, except COCHRANE, J., who dissents.